# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2014

Lyle W. Cayce
Clerk

No. 13-30975
Summary Calendar

NAVIGATORS INSURANCE COMPANY; MOSAIC UNDERWRITING SERVICE, INCORPORATED, on behalf of Lloyds Syndicate 1861,

Plaintiffs - Appellants

v.

MONCLA MARINE OPERATIONS, L.L.C., ET AL,

Defendants - Third Party Plaintiffs

v.

CERTAIN HULL AND MACHINERY UNDERWRITERS, Subscribing Severally to Policy No. B0702HA037000b; CERTAIN PRIMARY PROTECTION AND INDEMNITY UNDERWRITERS, Subscribing Severally to Policy No. B0702PA018140b; OSPREY UNDERWRITING AGENCY, LIMITED,

Third Party Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-2138

Before BENAVIDES, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30975

This interlocutory appeal is from the district court's order denying a motion to lift the stay for the distribution of sale proceeds. We DISMISS this interlocutory appeal for lack of appellate jurisdiction and DENY the petition for writ of mandamus.

I.    BACKGROUND

The insured, Moncla Marine Operations, LLC ("Moncla Marine") owned a derrick barge named MONCLA 101. The MONCLA 101 was used to drive posts and pilings in seabeds. In May of 2012, it was performing work in Terrebonne Bay, Louisiana. On June 13, Moncla Marine was unable to raise and refloat the barge because the hull had been damaged. Moncla Marine tendered the vessel to the hull underwriters as a total constructive loss.

Moncla Marine had three types of insurance policies covering the vessel: a Hull & Machinery Policy; a Primary Protection & Indemnity Policy ("P&I"); and an Excess Protection & Indemnity Policy ("Excess P&I"). The cost for removing the vessel totaled approximately $3.55 million. The P&I paid $1 million, and the Excess P&I paid the remaining $2.55 million.

On August 31, 2012, Plaintiff-Appellant Mosaic Underwriting Service, Inc. on behalf of Lloyd's Syndicate 1861, and Navigators Insurance Company (collectively "Excess P&I Underwriters") filed suit against MONCLA 101, in rem, and Moncla Marine, in personam, seeking a declaratory judgment that they are entitled to take title to the vessel, sell the vessel, and have priority over any claims to the proceeds of the vessel. On November 13, Moncla Marine denied Excess P&I Underwriters' claims and brought a counterclaim, alleging claims of negligence under Louisiana law, violations of the Louisiana Unfair Trade and Practices Act, breach of fiduciary duty, and detrimental reliance. That same day, Moncla Marine filed a third-party complaint against the Defendants-Appellees (Osprey Underwriting, the Hull Underwriting, and the P&I Underwriters), alleging the same claims as it did in its counterclaim.

No. 13-30975

On December 6, the Defendants-Appellees moved the court to stay proceedings and compel arbitration in London pursuant to the arbitration clauses in the applicable insurance policies. The court granted the motion to stay the proceedings Moncla Marine had brought against the Defendants-Appellees. On March 12, 2013, Moncla Marine moved to stay the proceedings against Excess P&I Underwriters and to compel it to arbitrate its claims in the London arbitration. On April 11, the court denied the motion to compel Excess P&I Underwriters to arbitrate and granted the request to stay the litigation pending the arbitration in London. Excess P&I Underwriters moved for reconsideration of the order staying the proceedings, and in the alternative, requested the district court to certify the interlocutory ruling for immediate appeal as a final judgment pursuant to 28 U.S.C. § 1292(b). The court denied both the motion for reconsideration of the stay and the request for certification of the interlocutory appeal.

Meanwhile, the MONCLA 101 was sold at public auction for $216,000. The $216,000 was tendered to the registry of the district court as a substitute for the *res*. Excess P&I Underwriters and Moncla Marine settled their claims against each other. Excess P&I Underwriters then moved to lift the stay to allow the court to distribute the $216,000 in proceeds from the sale of the vessel. Moncla Marine did not oppose the motion to lift the stay. However, the Defendants-Appellees, the underwriters who were arbitrating their claims with Moncla Marine, filed an opposition to the motion to lift the stay, arguing that they may be entitled to a salvage credit of the sale proceeds depending upon the outcome of the arbitration. The court denied the motion to lift the stay and denied as moot the motion to distribute the proceeds from the sale, explaining that "[a]ny determination by this Court as to the priority of the claims would require interpretation of the insurance contracts, which would

3

No. 13-30975

frustrate the ongoing arbitration." Order at 6.  Excess P&I Underwriters now appeal the denial of its motion to lift the stay.

II.    ANALYSIS

A. Jurisdiction

Excess P&I Underwriters argue that the district court abused its discretion in refusing to lift the stay it had issued pending the arbitration proceedings between Moncla Marine and the other underwriters.  However, as a threshold matter, we must determine whether we have jurisdiction to review the district court's order denying the motion to lift the stay.  *See Mire v. Full Spectrum Lending, Inc.,* 389 F.3d 163, 165 (5th Cir. 2004).  "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims. It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. This is the first principle of federal jurisdiction."  *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998) (citations and internal quotation marks omitted).  Because Excess P&I Underwriters assert this Court has jurisdiction, it has the "burden of demonstrating that jurisdiction is proper." *Id.*

The Federal Arbitration Act ("FAA") governs whether this Court has appellate jurisdiction to review arbitration orders.  *Apache Bohai Corp., LDC v. Texaco China, B.V.,* 330 F.3d 307, 309 (5th Cir. 2003); 9 U.S.C. § 16. Favoring arbitration, Congress enacted provisions that "authorize[ed] immediate appeals from orders disfavoring arbitration and forbidding immediate appeals from orders favoring arbitration."  *Id.* at 309.  More specifically, the FAA denies appellate jurisdiction to review nonfinal orders that stay judicial proceedings pending arbitration. *Id.*; § 16(b)(1).  In contrast, the FAA grants appellate jurisdiction to review a final decision regarding arbitration.  *Id.*; § 16(a)(3).  "A final decision is one that ends the litigation on

4

the merits and leaves nothing more for the court to do but execute the judgment." *Id.* (citation and internal quotation marks omitted). A district court's dismissal of a suit constitutes a final decision. *Id.* However, a district court's entry of an order staying proceedings is not an "appealable final order." *Id.*; *Kershaw v. Shalala*, 9 F.3d 11, 14 (5th Cir. 1993) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.10 (1983)). Thus, in the case at bar, the district court's issuance of the order staying its proceedings pending arbitration is not an appealable, final order.

Nonetheless, Excess P&I Underwriters argue that this Court has appellate jurisdiction under the collateral order doctrine. This doctrine "establishes that certain decisions of the district court are final in effect although they do not dispose of the litigation." *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009). For the collateral order doctrine to apply, the district court's "order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Id.* (citations and internal quotation marks omitted).

With respect to the first and second factors, although Excess P&I Underwriters argue that the stay order "conclusively answers the question," it fails to explain what question the stay resolves and what important issue is completely separate from the merits of the case. As previously indicated, in the order denying the motion to lift the stay, the district court stated that lifting the stay would "undercut the pending arbitration between Moncla Marine and third-party defendants." Order at 5. The court further stated "[a]ny determination by this Court as to the priority of the claims would require interpretation of the insurance contracts, which would frustrate the ongoing arbitration." *Id.* at 6. We fail to see how the district court's stay order conclusively answered any question except whether the stay would be lifted at

5

that time.   Further, as the district court explained, determining which underwriter's policy had priority with respect to the proceeds would require the court to interpret the policies.   We are not persuaded that such a determination is completely separate from the merits of the case.

With respect to the third factor, this Court has repeatedly held that an order granting a stay of the judicial proceedings "pending arbitration is not effectively unreviewable on appeal from a final judgment." *Jolley v. Paine Webber Jackson & Curtis, Inc.,* 864 F.2d 402, 404 (5th Cir. 1989).  *Accord W. of Eng. Ship Owners Mut. Ins. Ass'n (Luxembourg) v. Am. Marine Corp.*, 981 F.2d 749, 751 n.9 (5th Cir. 1993); *Int'l Ass'n of Machinists and Aerospace Workers Local Lodge 2121 v. Goodrich Corp.*, 410 F.3d 204, 208 n.3 (5th Cir. 2005).  We explained that such an "order is fully reviewable because the parties will have an opportunity to secure a final decision from the district court after the arbitration and can appeal from that final decision."  *Id.*  Thus, the district court's order is not appealable under the collateral order doctrine.

B. Mandamus

In the alternative, Excess P&I Underwriters request this Court to treat this appeal as a Petition for Writ of Mandamus pursuant to 28 U.S.C. § 1651(a) and grant relief by overturning the stay order.  "Mandamus is a drastic remedy reserved only for truly extraordinary situations." *Apache Bohai*, 330 F.3d at 310.  To obtain mandamus relief, the petitioner must show that the district court clearly and indisputably did not have discretion to issue the order staying the proceedings pending arbitration.  *Id.*  The petitioner's "burden is particularly heavy in the context of mandamus review of a decision to enter a stay pending arbitration, 'because Congress has expressly limited interlocutory review of a district court decision on arbitration.'"  *Id.* (quoting *McDermott Int'l, Inc. v. Underwriters at Lloyds*, 981 F.2d 744, 748 (5th Cir.

1993)).  Further, a writ of mandamus is not to be treated as a substitute for an appeal.  *Id.*

Excess P&I Underwriters cite a D.C. Circuit opinion that, over a dissent, granted mandamus relief.  The D.C. Circuit case involved a district court's order staying a petition to confirm and enforce a foreign arbitral award.  *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012).  The D.C. Circuit recognized that the "FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards:  the Convention is clear that a court may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention."  *Id.* at 727 (citations and internal quotation marks omitted).  The district court issued a stay of the enforcement of the arbitral award on a ground not set forth in the Convention.  *Id.* at 731.  Thus, the D.C. Circuit held that the district court's order staying the proceedings exceeded the bounds of its authority, warranting mandamus relief.  That case is inapposite.  Here, the arbitration proceedings are still pending, and there has been no award to enforce.  Accordingly, the limits on the district court's discretion in *Belize* to impose a stay are not applicable to the instant case.[1]

Moreover, the facts of this case do not constitute an "extraordinary situation" warranting the "drastic remedy" of mandamus relief.  *Apache Bohai*, 330 F.3d at 310.  Here, the district court recognized that the damaged vessel was losing value while this case was being litigated and thus allowed the vessel to be sold at auction.  The proceeds were tendered to the court's registry and will be held there until the arbitration proceedings conclude.  The district court

---

[1] Excess P&I Underwriters also cite a case in which we granted mandamus relief from the denial of a motion to transfer venue.  *See generally In re Radmax, Ltd.,* 720 F.3d 285 (5th Cir. 2013).  The factors that must be demonstrated to obtain mandamus relief in a venue transfer case are not the same as the factors in an arbitration case.  This case does not support granting mandamus relief in the instant case.

will then determine how the proceeds will be distributed. The district court's actions secured the funds for final distribution. Excess P&I Underwriters paid $2.55 million to salvage the vessel and will have to wait until the district court determines the proper distribution of the $216,000. As previously noted, a petitioner has a heavy burden to show entitlement to mandamus relief with respect to a stay pending arbitration because the FAA expressly limits interlocutory review of a district court's arbitration decision. *Id.* Excess P&I Underwriters have not shown that the district court clearly and indisputably did not have discretion to issue the order staying the proceedings pending arbitration. Accordingly, we deny the petition for writ of mandamus.

For the above reasons, the appeal is DISMISSED for lack of jurisdiction, and the petition for writ of mandamus is DENIED.